Rose Ann **COATES TRUST** et al.,
Appellants-Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Appellee-Respondent.

**Nos. 71–1968 to 71–1973.**

United States Court of Appeals,
Ninth Circuit.

June 5, 1973.

469

| | | CAM | |
|---|---|---|---|
| | WIP | Class A Voting | Class B Nonvoting |
| Estate of Sydney Coates | 75 | | 664 |
| Robert N. Coates | 51 | 1,640 | 2,250 |
| Peter Coates | 6 | | 205 |
| Cathy Coates | 6 | | 205 |
| Pamela Coates | 6 | | 205 |
| Charles N. Coates | 6 | | 205 |
| Marjorie Coates (Mrs. Robt.) | | | 290 |
| R. Morgan Boyd | 63 | 10 | 422 |
| Robert M. Boyd, Jr. | 6 | | 391 |
| James Boyd | 6 | | 391 |
| Ruby Boyd (Mrs. R. M.) | | 390 | 372 |
| A. C. Heinen | 57 | 10 | 375 |
| Barbara Heinen | 6 | | 340 |
| Gary Heinen | 6 | | 340 |
| Richard Heinen | 6 | | 340 |
| Molly Heinen (Mrs. A. C.) | | 390 | 325 |
| Totals | 300 | 2,440 | 7,320 |

The "purchase" was effected on May 20, 1965 when CAM and the shareholders of WIP entered into agreements in this form:

Gerald R. Hergert (argued), Joseph H. Trethewey, Trethewey & Brink, Seattle, Wash., for appellants-petitioners.

Charles E. Anderson (argued), Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, K. Martin Worthy, Chief Counsel, IRS, Meyer Rothwacks, Ernest J. Brown, Tax Div., Dept. of Justice, Washington, D. C., for appellee-respondent.

Before CHAMBERS, WRIGHT and KILKENNY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Sydney and Rose Ann Coates, together with their children, children's spouses, and grandchildren, owned all of the shares of two corporations, CAM Industries, Inc. (hereinafter called CAM) and Washington Industrial Products, Inc. (hereinafter called WIP). After the death of Sydney Coates, the family group agreed to combine the two corporations by having CAM "purchase" the shares of WIP.

When the transaction was complete, CAM and WIP shares were held by members of the family as follows:

### AGREEMENT FOR SALE OF STOCK

Agreement made this 20th day of May, 1965, by and between the undersigned "Seller" and CAM INDUSTRIES, INC., a corporation, hereinafter called the "Buyer".

Seller hereby sells to Buyer, and Buyer hereby purchases from Seller, ....... shares of the common stock of Washington Industrial Products, Inc., a Washington corporation, at the price and on the terms and conditions herein set forth.

1. *Purchase Price.* The price to be paid by Buyer to Seller for said shares of common stock shall be $1,000.00 per share or an aggregate purchase price of ........

2. *Delivery of Stock and Payment of Purchase Price.*

(a) The certificate or certificates for the shares of common stock sold hereunder by Seller are herewith delivered to Buyer, duly endorsed for transfer to Buyer, and Buyer hereby acknowledges receipt of said certificate or certificates.

(b) The purchase price shall be paid ......., or more at Buyer's op-

tion, on or before May 31, 1966, and a like sum, or more at Buyer's option, on the 31st day of May of each year thereafter until the 31st day of May, 1975, at which time the entire unpaid balance of the purchase price shall be due and payable. Buyer shall pay interest on the diminishing balance of said purchase price at the rate of four percent per annum from the 1st day of June, 1965, which interest shall be deducted from each installment payment and the balance of each payment applied in reduction of principal.

3. *Successors and Assigns.* The provisions of this agreement shall inure to the benefit of and bind the successors and assigns of Buyer and the executors, administrators, heirs, successors and assigns of Seller.

Subsequently, by order of the Superior Court of Washington for King County on September 23, 1965, Robert N. Coates as Trustee of the Trust Under Will of Sydney Coates received an undivided one-third interest in the May 20 contract for the sale of 75 shares of WIP held by the Sydney Coates Estate. By the same order Robert N. Coates as Trustee for the Rose Ann Coates Trust [1] received an undivided two-thirds interest in the May 20 contract for the sale of the 75 shares held by the Estate.[2]

In their 1965 income tax returns, all parties reported the 1965 transaction as a sale of their WIP stock entitling them to capital gain treatment. In his notice of deficiencies the Commissioner treated the "sale" as a redemption by a related corporation under § 304(a)(1) of the Internal Revenue Code of 1954,[3] taxable as a dividend at the face value ($1,000) of the agreements. The Tax Court upheld the Commissioner's § 304(a)(1) and dividend treatment,[4] but found the fair market value of the agreements to be 60% of their face value rather than 100% as determined by the Commissioner. It is from this decision that the taxpayers appeal.[5]

### I.

Initially, petitioners contend that since the two trusts were not in existence at the time of the transfer of the WIP shares to CAM they are not taxpayers within the meaning of § 7701(a)(14), and that, accordingly, the

---

1. Sydney and Rose Ann Coates had executed mutual wills. His will gave the house, auto, bank accounts and personal effects to Rose Ann Coates, with the residue of his estate going to the Trust Under Will of Sydney Coates. Her will provided that, in the event Sydney Coates predeceased her, she would convey by separate instrument her interest in any community property "to the Trustee or Trustees as named under the terms of the Trust created by the Will of Sydney N. Coates." Pursuant to this agreement, the Rose Ann Coates Trust was created by instrument dated August 21, 1965, executed by Rose Ann Coates, trustor, and Robert N. Coates, trustee.

2. The court below determined that the WIP stock was held by Sydney and Rose Ann Coates as community property. 37½ shares belonging to each spouse. The odd apportionment is explained by the Order Approving Final Account, Report and Decree of Distribution of the Superior Court, which provided that in dividing the community property "any disproportionate allocation necessary shall be made in the respective ownership of the contract receivable for the sale of the Washington Industrial Products stock."

3. All section references hereafter are to the Internal Revenue Code of 1954, as amended.

4. On October 24, 1969, the Tax Court entered decisions of no deficiency in the following listed cases on the basis that the redemption of their stock in WIP by CAM was substantially disproportionate pursuant to § 302(b)(2): Arthur C. Heinen and Molly M. Heinen; Estate of Ruby M. Boyd, deceased, R. Morgan Boyd, executor; R. Morgan Boyd; Robert W. Boyd and Judith K. Boyd; Gary A. Heinen; Richard G. Heinen; Barbara Gaye Heinen; James E. Boyd. Robert and Marjorie are not parties in this case because of other matters with respect to their 1965 return which had not been resolved by the Service at the time this suit was instituted.

5. The decision of the Tax Court is reported at 55 T.C. 501 (1970).

Commissioner determined deficiencies against the wrong parties. They would have us hold that since the WIP shares were community property, the proper parties for taxation are the Estate of Sydney Coates and Rose Ann Coates. We decline to do so and affirm the Tax Court.

■■ The Trust Under Will of Sydney Coates, under §§ 661 and 662, was a proper party to the proceedings below. While the question raised as to the Rose Ann Coates Trust is more difficult, we have concluded it also was a proper party below. Upon the death of her husband, Mrs. Coates held her community property interest in the WIP shares subject to a restriction on their use, by virtue of the mutual wills (see footnote 1 *supra*). Under Washington law, her agreement to transfer her half of the community property into trust was specifically enforceable by the beneficiaries thereof. In re Young's Estate, 40 Wash.2d 582, 244 P.2d 1165 (1952).

■ Thus on May 20, 1965 when the WIP shares held by the Estate were "sold," Mrs. Coates held her half of the community property in constructive trust for the beneficiaries of her agreement.[6] *Cf.* Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953). We conclude, therefore, that the beneficial and equitable owner of the 50 WIP shares on May 20 was the Rose Ann Coates Trust, and as such it was subject to the tax on the transfer there-

of. 2 Mertens, Law of Federal Income Taxation, § 17.08 (1967 Revision).

## II.

■ Petitioners next contend that the agreements entered into on May 20 between CAM and the WIP shareholders are "securities" as that term is used in § 351[7] and that, since after the May 20 transaction the WIP shareholders controlled over 80% of the stock of CAM, § 351 operates to grant them either no tax liability or capital gain treatment.[8] The Tax Court concluded that the agreements were not securities, citing Warren H. Brown, 27 T.C. 27 (1956).

Petitioners argue that the *Brown* decision creates an invalid distinction between an installment sales contract and other long term corporate obligations. *See* Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 3–55 (3d Ed. 1971); Comment, Section 351 Transfers to Controlled Corporations: The Forgotten Term—"Securities," 114 U.Pa.L.Rev. 314 (1965). We do not reach that issue, however, for even assuming *arguendo* that these agreements are "securities" under § 351, we are convinced that the provisions of § 351 are overridden by those of § 304 and that, accordingly, § 304 and not § 351 applies to this transaction. *See* Henry McK. Haserot, 46 T.C. 864, 872 (1966) (Tannenwald, J.) (separate opinion).

In Commissioner v. Stickney, 399 F.2d 828 (6th Cir. 1968), aff'g, Henry McK.

---

6. It is noteworthy that at no time after the death of her husband did Mrs. Coates obtain control over the WIP shares or the purchase agreements. Also, the agreements did not pass through Mrs. Coates, but rather were transferred directly from the Estate of Sydney Coates to the Rose Ann Coates Trust.

7. Section 351(a) provides that:
   No gain or loss shall be recognized if property is transferred to a corporation . . . by one or more persons in exchange for stock or securities in such corporation and immediately after

the exchange such person or persons are in control . . . of the corporation.

8. The taxpayers argue two alternative positions: (1) that all of the agreements are securities, that § 351 is applicable and, no "other property" having been received, that the taxpayers did not incur any tax liability on the transfer; or (2) that certain of these agreements are "securities" but that some of them could be treated as "other property" under § 351, thus making the transaction taxable at capital gains rates to the extent of the value of this other property.

Haserot, *supra,* the Sixth Circuit reached a contrary result. While the statutory language and legislative history reveal that Congress did not provide for or contemplate the possible conflict between the permissive policy of § 351 and the preventive policy of § 304, we are convinced that our decision "best achieves the underlying legislative intent and policy and . . . more nearly reflects the manner in which Congress would have 'straightened this ruck out if they had come across it.' " *Haserot, supra,* 46 T.C. at 878 (Tannenwald, J.). Accordingly, we decline to follow the Sixth Circuit for the reasons so cogently set forth by Judge Tannenwald.[9]

### III.

Petitioners next argue that the Tax Court erred in holding that the transaction was a redemption through the use of a related corporation under § 304(a)(1). They would have us hold that the "one or more persons" of § 304(a)(1)(A) refers to one person plus those persons whose shares are attributed to him under § 318, and that the con-

cept of aggregate control as prescribed by Reg. § 1.304–2(b) [10] and applied by the Tax Court departs from the specific language and intent of the statute.

Petitioners misconceive the operation and effect of § 304. That section was not designed to be so narrowly confined as to relate only to "family" transactions. To the contrary, it was designed to apply to any closely held corporations whether or not the parties were related by blood. The phrase "or more persons" is not superfluous, as petitioners ultimately must contend, but rather indicates an attempt to expand the scope of § 304(a)(1) beyond the family relationship to include unrelated persons who act in concert. *See* Radnitz v. United States, 187 F.Supp. 952 (S.D.N.Y.1960), aff'd per curiam, 294 F.2d 577 (2d Cir. 1961).

Since in the instant case the same group of persons controlled both WIP and CAM, § 304(a)(1) applies to this transaction, and the property received by the WIP shareholders must be treated as a distribution in redemption of the stock of CAM.[11]

---

9. Our case reveals the ultimate inconsistency that would result if we followed *Stickney* and held that the "except as otherwise provided" provisos of §§ 302(d) and 301(a) precluded § 304 applicability to these taxpayers. Other parties to this transaction were taxed at the capital gains rate by virtue of §§ 304(a) and 302(b)(2). (See footnote 4, *supra*). That result would not be altered were we to follow *Stickney's* interpretation of the provisos. Thus *Stickney's* rationale would lead us to hold that those specifically excluded by Congress from dividend treatment (by virtue of § 302(b)(2)) would be taxed at the capital gains rate, while those Congress intended to be taxed at ordinary income rates (by virtue of §§ 304(a), 302(d), and 301(a) would escape taxation altogether by § 351. Such a result does not comport with our reading of the legislative intent behind §§ 304 and 351.

10. Reg. § 1.304–2(b): In any case in which two or more persons, in the aggregate, control two corporations, section 304(a)(1) will apply to sale by such persons of stock in either corporation to the other (whether or not made simultaneously) provided the sales by each of such persons are related to each other. The determination of whether the sales are related to each other shall be dependent upon the facts and circumstances surrounding all of the sales. For this purpose, the fact that the sales may occur during a period of one or more years (such as in the case of a series of sales by persons who together control each of such corporations immediately prior to the first of such sales and immediately subsequent to the last of such sales) shall be disregarded, provided the other facts and circumstances indicate related transactions.

11. Section 304(a)(1)(B).

## IV.

To determine the tax consequences of a § 304(a)(1) redemption, it is necessary to refer to § 302. Unless the redemption qualifies as an exchange under one of the categories of § 302(b), it is to be treated under § 301.[12] The only portion of § 302(b) relevant here is § 302(b)(1), which provides that a redemption shall be treated as an exchange if it is "not essentially equivalent to a dividend." To so qualify, the redemption "must result in a meaningful reduction of the shareholder's proportionate interest." United States v. Davis, 397 U.S. 301, 313, 90 S.Ct. 1041, 1046, 25 L.Ed.2d. 323 (1970).

The instant transaction resulted in no reduction in any of the taxpayers' proportionate interests in WIP.[13] That being the case, the Tax Court correctly concluded that the distribution did not qualify for the preferred treatment under § 302(b)(1).

Taxpayers attempt to distinguish *Davis* on the grounds that that opinion applies only to 100% shareholders. The rationale of *Davis* does not support such a distinction, and we reject it without further discussion.

## V.

Petitioners finally contend that the Tax Court erred in determining the fair market value [14] of the agreements to be $600 per $1,000 face value. We have carefully examined the record and conclude that there was ample support for the court's finding. It certainly was not clearly erroneous.

The decision of the Tax Court is affirmed.

12. It is undisputed that § 301 treatment results in the distribution being taxed to each of the taxpayers as a dividend under §§ 316 and 301(c)(1).

13. The relevant inquiry concerns the taxpayers' respective interests in WIP. Section 304(b)(1).

14. The amount of the distribution is the fair market value of the property received. Section 301(b)(1).