ROY K. FURR and CHARLCIE FURR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Furr v. Commissioner
Docket No. 3571-73.
United States Tax Court
T.C. Memo 1975-85; 1975 Tax Ct. Memo LEXIS 286; 34 T.C.M. (CCH) 433; T.C.M. (RIA) 750085; March 31, 1975, Filed Wentworth T. Durant, for the petitioners. Tom G. Parrott, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax return for the taxable year ended December 31, 1970, in the amount of $ 18,388.59. The only issue for decision is whether a redemption of 673 shares of Class A nonvoting common stock of Furrs, Inc. owned by Roy Furr, was a redemption which was not essentially equivalent to a dividend. All the facts have been stipulated and are so found. Petitioners, husband and wife, resided in Lubbock, Texas at the time the petition in this case was filed. Petitioners filed a joint Federal income tax return for the taxable year 1970 with the district director of internal revenue at Austin, Texas on the cash receipts and disbursements method of accounting. Furrs, Inc. (Company), is a Texas corporation which has Class A nonvoting common stock, Class B voting common stock, and preferred *288 stock authorized, issued, and outstanding. On April 7, 1970, Company redeemed 673 shares of its Class A nonvoting common stock owned by Roy K. Furr (petitioner) for a total consideration of $ 37,015, composed of a concellation of an account receivable in the amount of $ 37,000 owed to Company by petitioner and its payment to him of $ 15 in cash. Immediately prior to this redemption, Company's stock was owned as follows: Class B
Class A
Preferred
Percent
Voting
Percent
Nonvoting
Percent
Stockholder
Stock
Ownership
Common
Ownership
Common
Ownership
Stock
Stock
Roy Furr
257
13.4
300
2.1
10,024
6.30
Roy Furr's
Parents
695
36.1
10,130
69.8
28,293
17.72
Roy Furr's
Spouse
0
0
0
0
55
.03
Roy Furr's
Children
0
0
0
0
220
.14
Furr Realty
Company
0
0
0
0
1,925
1.21
All Other
Stockholders
971
50.5
4,090
28.1
119,095
74.60
Total Shares
Outstanding
1,923
100.0
14,520
100.0
159,612
100.00
Immediately after the redemption, the outstanding stock of Company was owned as follows: Class B
Class A
Preferred
Percent
Voting
Percent
Nonvoting
Percent
Stockholder
Stock
Ownership
Common
Ownership
Common
Ownership
Stock
Stock
Roy Furr
257
13.4
300
2.1
9,351
5.89
Roy Furr's
Parents
695
36.1
10,130
69.8
28,293
17.80
Roy Furr's
Spouse
0
0
0
0
55
.03
Roy Furr's
Children
0
0
0
0
220
.14
Furr Realty
Company
0
0
0
0
1,925
1.21
All Other
Stockholders
971
50.5
4,090
28.1
119,095
74.93
Total Shares
Outstanding
1,923
100.0
14,520
100.0
158,939
100.00
*289 On April 7, 1970, the outstanding Class A and Class B common stock of Company had a book value of $ 55 per share, while its preferred stock had a value of $ 100 per share. On April 7, 1970, Furr Realty Company (Realty) had outstanding stock owned by the following persons in the percentages indicated: Class A
Class B
Voting
Percent
Nonvoting
Percent
Stockholder
Common Stock
Ownership
Common Stock
Ownership
Roy Furr
1
2.1
32
3.4
Roy Furr's
Parents
32
68.1
352
37.9
Company
0
0
124
13.4
All Other
Stockholders
14
29.8
420
45.3
Total Shares
Outstanding
47
100.0
928
100.0
On that date the outstanding Class A and Class B common stock of Realty had a book value of $ 1,739.86 per share. At the end of the taxable year 1970, Company had accumulated earnings and profits in the amount of $ 5,174,146.06. In addition to the April 7 redemption of 673 Class A common shares held by petitioner, Company redeemed 9,588 Class A common shares from various shareholders during 1970, including a redemption sometime prior to April 7, 1970, of 4,000 shares from petitioner's father for which he received $ 220,000. [1]
Petitioners did *290 not report the receipt of the $ 37,015 from Company on their 1970 joint return. Respondent in his notice of deficiency increased their taxable income as reported by this amount with the following explanation: The amount of $ 37,015 which you received from Furr's, Inc. in exchange for part of your capital stock was a distribution essentially equivalent to a dividend and represented your unreported ordinary dividend income. Reported income is increased accordingly. *291 Generally when property is distributed by a corporation to a shareholder the distribution is a dividend under sections 301 and 316. However, certain redemptions of stock are treated as sales of such stock, with the gain, if any, being capital gain. Section 302(a) provides for this exception in those cases in which section 302(b)(1),(2),(3) or (4) is applicable. Petitioner in this case contends that the redemption of his 673 shares of Class A nonvoting common stock of Company should be treated as a sale resulting in long-term capital gain since in his view the redemption of his stock was "not essentially equivalent to a dividend" under section 302(b)(1), I.R.C. 1954. [2]
*292 In United States v. Davis,397 U.S. 301, 313 (1970), the Supreme Court set forth what has become the fundamental test of dividend equivalency in the following words: If a corporation distributes property as a simple dividend, the effect is to transfer the property from the company to its shareholders without a change in the relative economic interests or rights of the stockholders. Where a redemption has that same effect, it cannot be said to have satisfied the "not essentially equivalent to a dividend" requirement of § 302(b)(1). Rather, to qualify for preferred treatment under that section, a redemption must result in a meaningful reduction of the shareholder's proportionate interest in the corporation. * * * See Coates Trust v. Commissioner,480 F. 2d 468 (C.A. 9, 1973), affirming 55 T.C. 501 (1970), where the Court specifically states, quoting the Davis case, that for a redemption to qualify under section 302(b)(1) it "must result *293 in a meaningful reduction of the shareholder's proportionate interest." Petitioner argues that this holding in the Davis case was intended to and should apply only to a sole shareholder corporation with a simple capital structure. In William A. Sawelson,61 T.C. 109, 117 (1973) we rejected a similar contention. Our inquiry here is therefore whether on the facts presented and applying the attribution rules of section 318, there was a "meaningful reduction" in petitioner's interest in Company following the redemption of his 673 shares of Class A nonvoting stock. Petitioner owned the following percentage interests in Company prior to and after the redemption: Prior to Redemption
Directly
Constructively *
Total
Preferred Stock
13.4
36.1
49.5
Class B Voting
Common
2.1
69.8
71.9
Class A Nonvoting
Common
6.3
17.89
24.19
After Redemption
Directly
Constructively *
Total
Preferred Stock
13.4
36.1
49.5
Class B Voting
Common
2.1
69.8
71.9
Class A Nonvoting
Common
5.89
17.97
23.86
*294 Since the only reduction in interest involved Class A nonvoting common stock, petitioner suffered no reduction in his voting position in the corporation or in his dividend and liquidation rights in his preferred stock. He experienced a reduction of 0.33 percent in his ownership of Class A nonvoting common which concommitantly reduced his rights to this extent to future earnings and to assets in liquidation, but under the facts of this case in our view such a small percentage reduction in these rights is not meaningful. See Bernard E. Niedermeyer,62 T.C. 280 (1974), on appeal (C.A. 9, Aug. 30, 1974), where a reduction from 90.5 percent, direct and indirect, to 80 percent was held not a meaningful reduction under Davis where the taxpayer, as did petitioner in this case after application of section 318(a), continued to dominate the corporation, and Fehrs Finance Co.,58 T.C. 174 (1972), affd. 487 F. 2d 184 (C.A. 8, 1973), cert. denied 416 U.S. 938 (1974), where we held a 10 percent reduction to be not meaningful where the taxpayer had post-redemption "domination" of the corporation solely by reason of the attribution *295 rules of section 318. Petitioner contends that since the redemption was not pro rata the distribution should not be considered as essentially equivalent to a dividend. Generally a substantially pro rata distribution will be treated as a dividend. See section 1.302-2(b), Income Tax Regs. However, there is no support in section 302 or its legislative history for petitioner's position that a distribution which is not substantially pro rata cannot be considered to be essentially equivalent to a dividend. Petitioner relies primarily on the statements in Himmel v. Commissioner,338 F. 2d 815 (C.A. 2, 1964), reversing 41 T.C. 62 (1963), as to the weight to be given to the fact that a distribution was not pro rata in support of his position. In that case, in a "multi-class capitalization" situation, the United States Court of Appeals for the Second Circuit held that a redemption of a portion of taxpayer's preferred stock altered his right to earnings and his net worth substantially enough to bar treatment of the redemption as equivalent *296 to a dividend. In reaching its conclusion the court stressed the fact that the taxpayer received substantially more in the distribution than he would have received had the corporation simply declared a dividend on its common stock. Petitioner points out that he also received more than he would have had Company declared a dividend and contends that under the Himmel case this factor alone precludes the distribution being treated as essentially equivalent to a dividend. We do not agree with petitioner's position. The Second Circuit in the Himmel case used a variety of factors other than that the distribution was nonprorata in reaching its conclusion, including what it viewed as a change in the taxpayer's relative economic interest and shareholder rights in the corporation. In our view a careful reading of the Himmel case refutes the inference petitioner draws that it holds that in a corporation with several classes of stock the fact that a distribution is not pro rata to the holding of common stock is conclusive proof that the distribution is not essentially equivalent to a dividend. Petitioner cites Stanley F. GrabowskiTrust,58 T.C. 650 (1972), in *297 support of his position that the Supreme Court in the Davis case did not reject the holding of the Himmel case. The taxpayer in the Grabowski case contended, as does the taxpayer here, that Himmel controlled the disposition of the case since the trusts received amounts different from the amounts that would have been received in a dividend declaration. We distinguished the facts in the Grabowski case from those in the Himmel case, stating that the facts were more comparable to those in Levin v. Commissioner,385 F. 2d 521 (C.A. 2, 1969), affirming 47 T.C. 258 (1966), where the taxpayer received less than he would have had the corporation declared a dividend and then stated (at 659): We do not decide whether compliance with the formula espoused in Himmel would necessarily satisfy the "meaningful reduction of the shareholders' proportionate interest" requirement of Davis. It is enough that such compliance is a minimum condition established by Davis and that such condition has not been met. * * * Our conclusion in the Grabowski case that a "meaningful reduction" of a taxpayer's interest in the corporation *298 is a "minimum condition" for a showing that a distribution is not essentially equivalent to a dividend finds support in a number of other cases decided by the Court. Bernard E. Niedermeyer,supra;Fehrs Finance Co.,supra. In Rose Ann Coates Trust,55 T.C. 501, 514 (1970), affd. 480 F. 2d 468 (C.A. 9, 1973), we specifically stated, citing the Davis case, that "[clearly] section 302 reaches nonprorata redemptions." Petitioner next cites Himmel for the proposition that a 5 percent reduction in a shareholder's net worth in a corporation is considered a sufficiently substantial reduction in interest to show that a distribution is not essentially equivalent to a dividend. Petitioner argues that his percentage reduction in the common stock of Company is greater than 5 percent and therefore under the Himmel case is a "meaningful reduction." Petitioner computes his percentage reduction only on the basis of his interest in common stock and not the preferred and common stock of Company, and in his calculation of the percentage reduction includes the reduction in net worth which he claims should be attributable to him due to a redemption *299 in 1970 of 4,000 shares of his father's Class A common stock in Company. Petitioner cites no authority to support the integration of these two redemptions. There is no evidence in this case of a relationship between the redemption of the stock of petitioner's father and the redemption of petitioner's stock. As we have pointed out, the redemption of petitioner's father's stock occurred prior to the April 7, 1970, redemption of 673 shares of petitioner's Class A stock. There is nothing to show how long before April 7, 1970, petitioner's father's stock was redeemed. Under these circumstances we find no basis for considering the redemption of petitioner's father's stock in determining petitioner's interest in Company before and after the redemption on April 7, 1970, of 673 shares of petitioner's Class A stock. When only the April 7 redemption is considered and petitioner's ownership in all classes of Company's stock is included in the computation, the reduction in petitioner's net worth in Company is minimal. Decision will be entered for respondent.
Footnotes
1. The stipulation does not show the date of the redemption of the 4,000 shares of petitioner's father's stock. However, it does show that at December 31, 1969, Roy Furr owned 26,148 shares of Class A nonvoting common stock of Company and Lela R. Furr owned 6,145 shares of Class A nonvoting stock of Company, a total of 32,293 shares. The stipulation shows that during 1970 4,000 shares of the Class A nonvoting stock of Roy Furr was redeemed. If this 4,000 shares of Class A stock is subtracted from the 32,293 shares of Class A stock owned on December 3, 1969, by Roy and Lola R. Furr the remainder is 28,293 shares of Class A stock, the exact number of such shares stipulated to have been owned by petitioner's parents both immediately before and immediately after the redemption on April 7, 1970, of the 673 shares of Class A nonvoting common stock owned by petitioner. It is therefore logical to conclude that the 4,000 shares of Class A stock of petitioner's father which were redeemed in 1970 were redeemed before April 7, 1970, although the record is silent as to exactly when in 1970 this redemption occurred or whether it was in one or more transactions.↩
2. All section references are to the Internal Revenue Code of 1954. SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK. (a) General Rule.--If a corporation redeems its stock * * *, and if paragraph (1),(2),(3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges.-- (1) Redemptions not equivalent to dividends.-- Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend. * * * * * (d) Redemptions Treated as Distributions of Property.-- Except as otherwise provided in this subchapter, if a corporation redeems its stock * * *, and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301↩ applies.
*. Petitioner is deemed to own the shares of his parents, his spouse, and his children under section 318(a)(1). Respondent on brief specifically states that the shares owned by Realty are not attributed to petitioner since even after considering family attribution petitioner did not have 50 percent in value of the Realty stock.↩