**H. Dale GUNTHER and Marie M. Gunther, et al., Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 89–1872.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1990.

Decided Aug. 6, 1990.

---

James M. Neis, Thomas P. Fitzgerald, Susan Cisle, Charles C. Murphy, Crane C. Hauser, Kimball R. Anderson, Winston & Strawn, Chicago, Ill., for petitioners-appellees.

James I.K. Knapp, Dept. of Justice, Tax Div., Gary R. Allen, Robert S. Pomerance, Kenneth L. Greene, Dept. of Justice, Tax Div., Appellate Section, Peter K. Scott, I.R.S., Ernest J. Brown, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for respondent-appellant.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

The Internal Revenue Service appeals from a decision by the United States Tax Court holding that appellees did not owe additional taxes for 1981 despite changes in the corporate structure of two closely-held corporations which they wholly-owned and controlled. In 1981, the appellees reorganized their businesses by exchanging all of their stock in one corporation for stock and debentures from the second corporation. The Internal Revenue Service considered the transaction to be governed by 26 U.S.C. § 304(a) and thus argued that the debentures were taxable as dividends. The appellees believed that the transaction was instead controlled by 26 U.S.C. § 351 and, therefore, the debentures were not taxable until they were sold or retired. The Tax Court determined that while both § 304(a) and § 351 applied to the transaction, § 351 was controlling and therefore the debentures were not taxable as dividends under

§ 304(a). For the following reasons we affirm.

## I.

Two brothers, H. Dale Gunther and Gene Gunther, owned all of the common stock of both Gunther Construction Co. ("Construction") and Galesburg Builders Supply Company ("Builders"). Their children owned all of the non-voting, preferred shares of these companies. Construction, or its predecessors, has been a highway and heavy construction business since about 1920. Builders, or its predecessors, has been in the business of supplying building materials for the same amount of time. Builders' principal product is ready-mix concrete. Construction relies solely on Builders for this concrete in its projects and accounts for roughly 15 percent of Builders' revenues. The Gunthers considered this relationship between Builders and Construction critical to their ability to compete successfully for highway contracts against other paving contractors. The Gunthers were successful competitors. In 1980, Construction had earnings and profits of more than $569,000 and Builders had earnings and profits of $527,998.

Late in the summer of 1980, according to their own statements, the Gunthers decided to protect the future viability of Builders by making it a wholly-owned subsidiary of Construction. Construction's tax consultants, Peat, Marwick, Mitchell & Co., recommended that in order to avoid tax liability, the Gunthers should transfer their Builders stock to Construction in exchange for stock and debentures from Construction. According to the consultants, this would be considered a tax-free exchange of property under § 351 of the Tax Code. On January 2, 1981, the Gunthers transferred all of their Builders stock to Construction in exchange for additional shares of Construction stock and 17 percent debentures due in 11 years and 1 day. Dale and Gene Gunther each received debentures in the amount of $270,000. The children received smaller amounts in proportion to their total shares. The total value of all the bonds issued to the Gunthers was $569,000, not

coincidentally the same amount as Constructions' earnings and profits for that year.

The Internal Revenue Service ("IRS" or "Service") became concerned when the Gunthers did not report any gain or loss from the transaction on their 1980 tax returns. The IRS determined after an audit that the transfer was subject to § 304(a)(1) of the Code. This section provides that if one or more persons control, directly or indirectly, at least 50 percent of each of two corporations, a transfer of stock in one corporation in return for property of the other is treated as a distribution in redemption of the acquiring corporation's stock. Thus, according to the IRS's reading of the Code, the bonds issued by Construction were to be treated as dividends issued to the Gunthers and taxable in 1980 as capital gains. Not surprisingly, the Gunthers petitioned the Tax Court for a redetermination of these alleged deficiencies. The Gunthers contended that § 351, not § 304(a), should apply to the transaction. Section 351(a) provides that no gain or loss shall be recognized if (1) property is transferred to a corporation by one or more persons solely in exchange for stock or securities in that corporation and (2) immediately after the exchange the transferors of the property are in control of at least 80 percent of either the voting control or total shares of the corporation. The Gunthers argued that because the bonds issued by Construction were securities and because the family controlled 100 percent of the resulting corporation, the exchange was tax-free under this provision of the Code.

In a thoughtful and detailed 44–page opinion for a thirteen judge majority of the Tax Court, Judge Chabot wrote that while both sections could apply, § 351 was controlling. Judge Chabot based this conclusion on the plain language of both sections, their legislative histories, and previous decisions by the Tax Court, namely *Haserot v. Commissioner*, 41 T.C. 562 (1964). Judge Chabot reviewed the logic behind the *Haserot* decision and concluded that its analysis was still valid. Four judges, however, dissented from the opinion, stating that § 304(a) was more appropriate under

these circumstances and that applying § 351 would lead to absurd results. The IRS filed a timely notice of appeal and now asks this court to adopt the views of the dissent rather than those of the majority of the Tax Court.

## II.

 This appeal presents a single issue to this court: when both § 304(a) and § 351 are applicable to a given transaction, which section is controlling? Despite the Tax Court's careful treatment of this issue below, this is purely a question of law and our review here is plenary. As we have stated before, "we owe no special deference to the Tax Court's legal views." *Prussner v. United States,* 896 F.2d 218, 224 (7th Cir.1990). *See also Commissioner v. Hendrickson,* 873 F.2d 1018, 1022 (7th Cir.1989); *Merit Life Ins. Co. v. Commissioner,* 853 F.2d 1435, 1438 (7th Cir.1988). We will disturb the Tax Court's findings of fact, however, and its application of law to those facts, only if they are clearly erroneous. *Hendrickson,* 873 F.2d at 1022; *see also Yosha v. Commissioner,* 861 F.2d 494, 499 (7th Cir.1988).

There is no real dispute between the parties that this transaction falls within the terms of both § 304(a) and § 351. Nor could there be any. Section 304(a)[1] treats sales of stock between corporations controlled by the same person or persons as distributions in redemption of the acquiring corporation's stock. Thus, the Code protects against attempts to disguise distributions or dividends as mere sales of stock. Section 304(c)(1) defines "control" as the "ownership of stock possessing at least 50 percent of the total combined voting power

of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock." And under § 304(c)(2), this ownership may be constructive ownership if the familial or partnership relationships are present as provided by § 318(a). Here the Gunthers, the brothers and the family as a whole, held the 50 percent control of both Construction and Builders as required by § 304(c)(1), and thus the terms of § 304(a) are satisfied.[2]

The tax consequences of § 304(a) are governed by §§ 302 and 301. Under § 302(d), a transaction is to be controlled by § 301 if that transaction is essentially equivalent to a dividend. As the Tax Court determined, the Gunthers' transaction was properly characterized as essentially equivalent to a dividend since there was no reduction in control or ownership after the exchange of Builders and Construction stock. Thus, §§ 302(d) and 301 are applicable. Section 301 provides:

(a) In General.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

. . . . .

(c) Amount taxable.—In the case of a distribution to which subsection (a) applies—

(1) Amount constituting dividend.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

Therefore, if the Gunthers' transaction is controlled by § 304(a), as explained by §§ 302 and 301, the Construction deben-

---

**1.** Section 304(a) states:
SEC. 304. REDEMPTION THROUGH USE OF RELATED CORPORATIONS.
(a) Treatment of Certain Stock Purchases.—
(1) Acquisition by related corporation (other than subsidiary).—For purposes of sections 302 and 303, if—
(A) one or more persons are in control of each of two corporations, and
(B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control, then ... such property shall be treated as a distribu-

tion in redemption of the stock of the corporation acquiring such stock. In any such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation.

**2.** We also agree with the Tax Court's conclusion that the Construction debentures issued to the Gunthers in exchange for the Builders stock constituted "property," thus satisfying the terms of § 304(a)(1)(B).

tures, issued to the Gunthers in exchange for the Builders stock, would be considered as dividends and taxed as capital gains in the year of the transaction.

However, the Gunthers' exchange of Builders stock for Construction stock and debentures also falls under the plain terms of § 351. In direct opposition to §§ 304, 302 and 301, § 351(a) provides:

> No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation.

Section 368(c) defines "control" of a corporation for purposes of § 351 as "ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation." As the Tax Court noted:

> In the instant case, one or more persons (the Gunthers) transferred property (Builders stock) to a controlled corporation (Construction) solely in exchange for stock and securities (11–year debentures) in the controlled corporation.

Moreover, the Gunthers controlled 100 percent of both the voting power and the total number of shares, thus qualifying as controlling the corporation for purposes of §§ 351(a) and 368(c). Therefore, we conclude, as did the Tax Court, that the Gunthers' exchange of Builders stock for Construction stock and 11–year debentures falls within the terms of both §§ 304 and 351.

■ This brings us back to the central point of the controversy: when both of these conflicting sections apply to a given transaction, which one governs? As with any question of statutory interpretation, our "starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). *See also Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). As this court has often noted, our guiding star for statutory interpretation will be the plain language of the statute. *Schalk v. Reilly*, 900 F.2d 1091, 1095–96 (7th Cir. 1990). We will depart from the text of the statute only where following the plain language would lead to an absurd result. *See United States v. One Parcel of Real Estate*, 903 F.2d 490, 492–93 (7th Cir.1990).

Both § 302(d) and § 301(a) begin with the phrase "Except as otherwise provided in this chapter...." The Gunthers argue, as they did before the Tax Court, that § 351 is just such an exception provided for elsewhere in the Code. We agree. By their plain language, §§ 301 and 302 do not apply to a given transaction if it also falls within the terms of § 351. This issue was presented to the Tax and federal courts for the first time over 25 years ago in *Haserot v. Commissioner*, 41 T.C. 562 (1964) ("*Haserot I*"), *rem'd*, 355 F.2d 200 (6th Cir. 1965), 46 T.C. 864 (1966) ("*Haserot II*"), *aff'd sub nom. Commissioner v. Stickney*, 399 F.2d 828 (6th Cir.1968). In the *Haserot* decisions, a taxpayer owning more than 50 percent of two corporations and 80 percent of a third transferred all his stock in the first two corporations to the third corporation in exchange for stock and cash. The Tax Court there determined that § 351 and not §§ 301, 302 and 304 applied, and thus the payment received was treated as a payment in exchange for stock rather than as a dividend. After a remand by the Sixth Circuit to determine whether the transaction was essentially equivalent to a dividend, 355 F.2d 200, the Tax Court addressed only this limited question and did not alter its original decision. *Haserot II*, 46 T.C. at 872. The Sixth Circuit then affirmed this decision in *Commissioner v. Stickney*, 399 F.2d 828. There, in discussing the question of which section should govern the transaction, the Sixth Circuit quoted with approval the Tax Court's treatment of the issue:

> "[T]he statement in sections 301(a) and 302(d), 'except as otherwise provided in the chapter' [or subchapter] of the Code, indicate that Congress made the policy decision that dividend treatment will re-

sult from the application of Section 302 only if no other provision in the relevant parts of the Code requires treatment. Section 351 has no such limitation. That section is, by its terms, applicable. That section provides for tax treatment of the payment in question in a manner other than and different from the distribution treatment provided for by sections 302(d) and 301. Consequently, the very words in the latter sections preclude dividend treatment in this case."

399 F.2d at 834–35 (quoting *Haserot I*, 41 T.C. at 570). We believe this approach to the conflict continues to be the most logical and consistent with the plain language enacted by Congress.

In defense of his opposing view, the Commissioner points principally to two authorities: first, the dissenting opinion in *Haserot II* of Judge Tannewald; and second, the Ninth Circuit's decision in *Coates Trust v. Commissioner*, 480 F.2d 468 (9th Cir.1973). In his dissent to *Haserot II*, Judge Tannewald wrote "I believe that the 'except' clauses of sections 302(d) and 301(a) relate to the terms 'redemption' and 'distribution' in the respective subsections and are therefore limited to the provisions dealing with such situations. Such reasoning allows the permissiveness of section 351 to yield to the preventive policy of section 304." 46 T.C. at 877–78. Judge Tannewald argued that any other interpretation would permit the 80 percent shareholder to extract corporate earnings at deferred capital gains rates but deny this to the 50 to 79 percent shareholder. Such a result would be absurd because the larger shareholder would be in a better position to avail himself of such mischief. We disagree. Judge Tannewald's result-oriented approach is not supported by a plain reading of the statute, nor is it necessarily more consistent with Congressional intent. As the Tax Court majority noted in *Haserot I*, "Had Congress intended that Section 304(a) treatment apply to such situations as the present one that end could have been accomplished by a specific affirmative enactment, or by a negation of 351 application." 41 T.C. at 570. Congress did not do so. While the resulting interpretation does

lead to certain inconsistencies, such inconsistencies are inevitable in a set of laws as large and complicated as the Tax Code. We will not redraft sections of the Code simply to bring it in line with our view, or the Commissioner's, of what the Code should say. As this court has noted: "... whatever our view of the matter, Congress has spoken and it is not our business to rewrite legislative history." *United States v. Dombrowski*, 877 F.2d 520 (7th Cir.1989).

The Commissioner also directs us to the Ninth Circuit's opinion in *Coates Trust*, 480 F.2d 468 (9th Cir.1973). There the family owners of two closely-held corporations, WIP and CAM, transferred all of their stock in WIP to CAM in exchange for a lump-sum cash payment plus interest in installments over a 10–year period. WIP was then dissolved, and CAM acquired its assets and assumed its liabilities. The Tax Court held that § 351 did not apply to this transaction because the cash and installment payments could not be considered "securities" for purposes of that section. Thus, taxpayers' gains following the exchange were treated as a distribution taxable as a dividend under §§ 304, 302 and 301. On appeal, the Ninth Circuit stated that "even assuming *arguendo* that these agreements are 'securities' under § 351, we are convinced that the provisions of § 351 are overridden by those of § 304 and that, accordingly, § 304 and not § 351 applies to this transaction." 480 F.2d at 472. As support for this conclusion, the court noted:

> While the statutory language and legislative history reveal that Congress did not provide for or contemplate the possible conflict between the permissive policy of § 351 and the preventive policy of § 304, we are convinced that our decision "best achieves the underlying legislative intent and policy and ... more nearly reflects the manner in which Congress would have straightened this ruck out if they had come across it."

*Id.* at 473 (quoting *Haserot II*, 46 T.C. 864, 878 (1966) (Tannewald, J., dissenting)). Thus, the Ninth Circuit declined to follow the Sixth Circuit's decision in *Commissioner v. Stickney*, 399 F.2d 828 (6th Cir.1968).

The Ninth Circuit's brief, conclusory treatment of this issue provides little support for the Commissioner's arguments before us. In contrast to the majority opinion in *Haserot I* and the detailed explanations offered by the Tax Court and Sixth Circuit, the Ninth Circuit dismisses this complex issue with two short paragraphs. While, of course, length and clarity are not always synonymous (particularly in legal writing), the lack of support offered by the Ninth Circuit for its departure from the carefully articulated standard of both the Tax Court and the Sixth Circuit is rather glaring. The court simply notes that its "case reveals the ultimate inconsistency that would result if we followed *Stickney*." 480 F.2d at 473 n. 9. Such an inconsistency is understandable, however, given that § 351 did not even properly apply to the transaction at issue and the Ninth Circuit was only applying it *"arguendo."* Thus, given the cursory and hypothetical treatment of the issue in *Coates Trust,* we believe its conflicting decision is not sufficiently persuasive authority to affect our view of the case before us.

Congress has obviated the need for much future consideration of this issue through the amendments to the Tax Code passed as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. 97–248, 96 Stat. 324, 490, Sec. 226(a)(1)(A). Through these amendments, Congress provided that transfers occurring after August 31, 1982, which fall under both § 304 and § 351, will be treated under § 304. Thus, Congress apparently noticed the conflict it had created and determined "to straighten the ruck out" itself. This change, however, was prospective only. Absent a clear statement by Congress that these amendments were to apply retroactively, they will be construed to apply only to future transactions. *See United States v. Kairys,* 782 F.2d 1374 (7th Cir.1986).

### III.

The Gunthers' exchange of Builders stock for Construction stock and debentures satisfies the terms of both § 351 and § 304(a) of the Tax Code. Where these conflicting sections are both applicable, however, their plain language indicates that § 351 is controlling. Therefore, the exchange was tax-free and no immediate gain or loss should have been recognized for tax purposes. The judgment of the Tax Court is

AFFIRMED.