ESTATE OF JACK BROWN OWEN, DECEASED, MARY
ANN HEYEN, EXECUTRIX, PETITIONER v.
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 13004–90.          Filed April 20, 1995.

*John T. Suter,* for petitioner.
*C. Glenn McLoughlin,* for respondent.

CHABOT, *Judge:* Respondent determined a deficiency in Federal estate tax and additions to tax under sections 6653(a)[1] (negligence, etc.), 6653(b) (fraud), and 6660 (valuation understatement) against petitioner as follows:

---

[1] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect for Oct. 2, 1986. We apply the 1954 Code, instead of the 1986 Code, because the Tax Reform Act of 1986, which enacted the 1986 Code, was not signed into law until Oct. 22, 1986, and none of the provisions that figure in this opinion was amended retroactively.

*Additions to tax*

| Deficiency | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6660 |
|---|---|---|---|---|---|
| $101,960 | $3,933.62 | 50 percent of the interest on $78,672.45, the part of the under-payment attributable to neg-ligence, etc. | $9,287.71 | 50 percent of the interest on $12,383.62, the part of the under-payment attributable to fraud | $7,552 |

In the answer, respondent concedes the fraud additions to tax and asserts increased additions to tax on account of negligence, etc., for each of the items that had given rise to the fraud additions to tax in the notice of deficiency.

After concessions,[2] the issues for decision are as follows:

(1) Whether petitioner is liable for additions to tax under section 6660;

(2) whether petitioner is entitled to a credit under section 2011(a) for State death taxes on account of decedent's 1984 and 1986 gifts;

(3) whether decedent's 1984 and 1986 gifts are to be taken into account for the purpose of computing the maximum permissible State death tax credit under section 2011(b).

FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

*Background*

When the petition was filed in the instant case, petitioner was a Kansas estate with legal residence in St. John, Kansas. Decedent died a resident of St. John on October 2, 1986. Decedent's estate was probated in Stafford County, Kansas. Mary Ann Heyen (hereinafter sometimes referred to as Mary Ann), decedent's sister, is the executrix of the estate. Mary Ann was a legal resident of St. John when the petition was

---

[2] The parties have stipulated that petitioner is not liable for the fraud additions to tax and that petitioner is liable for the negligence, etc., additions to tax on the entire underpayment. They also have resolved other disputes about credits, adjustments to the taxable estate, and items that depend on a final determination in another case pending before this Court, Estate of Jennie Owen, Deceased, Mary Ann Heyen, Executrix, docket No. 37787–87.

filed. Letters testamentary were issued to Mary Ann by the District Court of Stafford County.

Petitioner's estate tax return was timely filed on July 6, 1987.

*Gifts From Decedent—1984, 1986*

In 1984, decedent made a gift of 15 shares of St. John National Bank stock, worth $14,810; this gift was not reported on petitioner's Federal estate tax return nor on petitioner's Kansas inheritance tax return. This gift is to be taken into account for purposes of section 2001(b) in the instant case as a component of adjusted taxable gifts.

In 1986, decedent gave 80 percent of the stock of Dominion Corp. to Mary Ann. This gift was valued at $391,865.82 on petitioner's Federal estate tax return (Schedule G—Transfers During Decedent's Life) and on petitioner's Kansas inheritance tax return and has an adjusted taxable gift value of $381,866 (the value of the property, rounded to the nearest dollar, less the section 2503(b) $10,000 exclusion). This gift is to be taken into account for purposes of section 2001(b) in the instant case as a component of adjusted taxable gifts and not as a component of transfers during decedent's life.

Also in 1986, decedent made gifts of $8,900 in personal property and $1,550 in farm assets; these gifts were not reported on petitioner's Federal estate tax return nor on petitioner's Kansas inheritance tax return. These gifts are to be taken into account for purposes of section 2001(b) in the instant case as components of adjusted taxable gifts.

The status of these gifts is summarized in table 1.

|  | | Reported on death tax return | |
| Item | Adjusted taxable gift value | Federal | Kansas |
| --- | --- | --- | --- |
| 1984—St. John National Bank stock | $14,810 | not shown | not shown |
| 1986—Dominion Corp. stock | 381,866 | $391,865.82 | $391,865.82 |
| 1986—Personal property | 8,900 | not shown | not shown |
| 1986—Farm assets | 1,550 | not shown | not shown |
| Total | 407,126 | 391,865.82 | 391,865.82 |

Petitioner paid $73,545 in Kansas State inheritance tax, some portion of which is attributable to the gift of Dominion Corp. stock. On its Federal estate tax return, petitioner

claimed a credit for $19,978.42 of this amount, and a credit for $55,417.55 on account of estate taxes paid by the estate of Jenny Owen, who died in 1984 (*supra* note 2), leaving a net Federal estate tax of $13,854.39.

*Bank Accounts*

When decedent died he owned two checking accounts, as follows: St. John National Bank account #120251 (hereinafter sometimes referred to as the St. John Bank account) and First National Bank & Trust of St. John account #35259 (hereinafter sometimes referred to as the First National Bank account). After decedent's sudden death, five checks that decedent had recently written were found by the Reno County, Kansas, Sheriff's Department in a suitcase in decedent's car. Decedent had not delivered these checks. Meryle Heyen (hereinafter sometimes referred to as Meryle) is Mary Ann's husband. Brenda Heyen (hereinafter sometimes referred to as Brenda) is decedent's niece. Bill Bebee (hereinafter sometimes referred to as Bill) is Brenda's husband. These five checks are described in table 2.

*Table 2*

*St. John Bank account*

| Date | Payee | Notation on check memo line | Amount |
|------|-------|------------------------------|--------|
| 9/21/86 | Brenda | Gift | $10,000 |
| 9/21/86 | Bill | Gift | 10,000 |
| 9/21/86 | Meryle | Gift | 10,000 |
| Total | | | 30,000 |

*First National Bank account*

| Date | Payee | Notation on check memo line | Amount |
|------|-------|------------------------------|--------|
| 9/27/86 | Mary Ann | Past loan and re-imbursed expenses | 61,000 |
| 9/21/86 | Meryle Heyen, Inc. | Fertilizer | [1] 3,720 |

[1] This $3,720 check was for the expenses of fertilizer for decedent's farm. The effect of the parties' stipulation is to reduce the value of the First National Bank account by the amount of this check.

The $61,000 check to Mary Ann was not honored by the First National Bank & Trust of St. John in the ordinary

course of business. It was later presented anew and cashed, however, by direction of the Probate Court some months after decedent's death. The three $10,000 checks and the $61,000 check are not payments for decedent's legal obligations.

Table 3 shows the actual values of the two bank accounts as of the date of decedent's death, and the values reported on petitioner's Federal estate tax return.

### Table 3

| | Reported | Actual | Reported as percent of actual [1] |
|---|---|---|---|
| St. John Bank account | $54,517 | $84,517 | 64.5 |
| First National Bank account | 19,052 | [2] 80,052 | 23.8 |

[1] The parties' stipulation rounds the values to the nearest dollar, even though the estate tax return reports the amounts to the cent. This rounding does not affect the percentages shown in this table.

[2] The First National Bank account actually had a balance of $83,772.20. However, the parties treat the $3,720 check to Meryle Heyen, Inc., as properly excludable from the value of that account. See *supra* table 2, note 1.

The underreporting of the values of the two bank accounts, shown in table 3, resulted from petitioner's reducing the actual values of those bank accounts by the amounts of the first four checks described *supra* in table 2.

The amounts reported on petitioner's Federal estate tax return are the same as the amounts reported on the Inventory and Valuation filed with the District Court of Stafford County on June 19, 1987. The Inventory and Valuation further describes the bank accounts under the category All Other Personal Property, as follows:

6. Checking account #35259, First National Bank & Trust, St. John, Ks, $83,772.20 less outstanding checks of $3,720 and $61,000 .......................... $19,052.20
7. Checking account #120251 St. John National Bank, St. John, Ks, $84,516.79 less outstanding checks of $30,000 .................................................. 54,516.79

In contrast, petitioner's Federal estate tax return shows only the net amounts and does not refer to the outstanding checks. The checks referred to in the Inventory and Valuation are the checks described *supra* in table 2.

*Gifts to Decedent*

During 1984 and 1985 Mary Ann and Meryle each wrote checks payable to decedent; these checks were cashed or deposited. The account on which the checks were written is titled in the names of Mary Ann, Meryle, and Brenda.

These checks are described in table 4.

*Table 4*

| Check date | Check amount | Maker of check | Date paid by drawee bank | Notation on memo line |
|---|---|---|---|---|
| 1/27/84 | $5,000 | Meryle | 1/31/84 | Gift |
| 6/10/84 | 10,000 | Mary Ann | 6/23/84 | 1984 Gift |
| 12/24/84 | 5,000 | Meryle | 2/15/85 | 1984 Gift |
| 1/3/85 | 10,000 | Mary Ann | 3/18/85 | 1985 Gift |

The checks described in table 4 were presented to respondent during the examination process in connection with petitioner's contention that decedent owed money to Mary Ann.

The checks described in table 4 were gifts to decedent. These checks were not loans to decedent and did not create a debt owed to Mary Ann by decedent.

*Crop Subsidy Program*

In 1984 decedent and Meryle had a dispute about the management of cropland which decedent had recently acquired as a remainder holder due to the death of Jennie Owen, a life tenant. Jennie Owen was decedent's mother. When Jennie Owen owned the cropland, she had leased it to Meryle Heyen, Inc., to farm. In order to maintain compliance with the requirements of the Agricultural Stabilization and Conservation Service (hereinafter sometimes referred to as ASCS) and be eligible for Federal Government farm program payments, it was necessary for decedent to execute an agreement of compliance. Decedent's delay in executing such an agreement caused Meryle to miss the deadline for applying for participation in the 1984 ASCS crop subsidy program. Some amount of income was forgone, because this cropland was not enrolled in the ASCS program for 1984. The ASCS program is completely voluntary, and decedent did not have any legal obligation to place the cropland in the program.

*Decedent's Note to Mary Ann*

Decedent left a note for Mary Ann, scribbled on a looseleaf notebook divider. The note appears to state as follows:

Imp't.

Mary Ann,

Last taxes were done by Don Knapperberger who has copy.

There is money you loaned corp & services rendered for which you are entitled of 46,800.30 a debt or Comp [of Corp?] to you reflected in Liabilities.

Get his taxes to file Corp report—it's pretty accurate by land was not recorded as did not have deed & knew I'd have to amend it. It's my fault, just didn't feel good.

JackBOwen          Jack

---

As to petitioner's undervaluation of the First National Bank account because of decedent's $61,000 check to Mary Ann, there was a reasonable basis for the valuation claimed on the estate tax return, this claim was made in good faith, and respondent committed an abuse of discretion in failing to waive the addition to tax under section 6660.

OPINION

I. *Section 6660*

A. *Application to the Bank Accounts*

Respondent contends that additions to tax under section 6660 are applicable to so much of the underpayment as is attributable to petitioner's $61,000 underreporting of the First National Bank account, and $30,000 underreporting of the St. John Bank account, because the underreporting of these accounts constitutes valuation understatements of property within the meaning of section 6660.

Petitioner contends that section 6660 does not apply to underpayments of tax attributable to the underreporting of the value of a bank account, because (1) bank accounts are not the type of property to which section 6660 applies, (2) bank accounts are not the type of property subject to valuation problems, and (3) the Congress did not intend section 6660 to apply to bank accounts.

We agree with respondent.

Section 6660[3] provides for an addition to tax if there is an underpayment of estate or gift tax of at least $1,000 attributable to a valuation understatement. There is a valuation understatement if the value of any property claimed on the tax return is 66⅔ percent (or less) of the correct value.

Section 6660 applies to valuations of "property", but only in the context of subtitle B, relating to estate and gift taxes. Subsecs. (c) and (a) of sec. 6660. In the instant case, our focus is on the estate tax portion of subtitle B.

---

[3] SEC. 6660. ADDITION TO TAX IN THE CASE OF VALUATION UNDERSTATEMENT FOR PURPOSES OF THE ESTATE OR GIFT TAXES.

(a) ADDITION TO THE TAX.—In the case of any underpayment of a tax imposed by subtitle B (relating to estate and gift taxes) which is attributable to a valuation understatement, there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributed.

(b) APPLICABLE PERCENTAGE.—For purposes of subsection (a), the applicable percentage shall be determined under the following table:

| If the valuation claimed is the following percent of the correct valuation— | The applicable percentage is: |
| --- | --- |
| 50 percent or more but not more than 66⅔ percent. | 10 |
| 40 percent or more but less than 50 percent. | 20 |
| Less than 40 percent. | 30 |

(c) VALUATION UNDERSTATEMENT DEFINED.—For purposes of this section, there is a valuation understatement if the value of any property claimed on any return is 66⅔ percent or less of the amount determined to be the correct amount of such valuation.

(d) UNDERPAYMENT MUST BE AT LEAST $1,000.—This section shall not apply if the underpayment is less than $1,000 for any taxable period (or, in the case of the tax imposed by chapter 11, with respect to the estate of the decedent).

(e) AUTHORITY TO WAIVE.—The Secretary may waive all or any part of the addition to the tax provided by this section on a showing by the taxpayer that there was a reasonable basis for the valuation claimed on the return and that such claim was made in good faith.

(f) UNDERPAYMENT DEFINED.—For purposes of this section, the term "underpayment" has the meaning given to such term by section 6653(c)(1).

Subsec. (f) was added by sec. 1811(d) of the Tax Reform Act of 1986 (TRA 86), Pub. L. 99–514, 100 Stat. 2085, 2833, retroactively as if included in sec. 6660 when sec. 6660 was enacted, TRA 86 sec. 1881, 100 Stat. 2914. The later amendments of this provision by TRA 86 sec. 1899A(57), 100 Stat. 2961, and by sec. 7721(c)(2) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101–239, 103 Stat. 2106, 2399 (which repealed sec. 6660), do not affect the instant case.

As a result of OBRA 89, the substance of sec. 6660 may now be found in subsecs. (g) and (h)(2)(C) of sec. 6662.

The "authority to waive" provision of sec. 6660(e) has been replaced by a reasonable cause exception. Sec. 6664(c)(1). This exception is based on similar criteria which under the authority to waive standard of pre-OBRA 89 law allowed, but did not require, a waiver of the addition to tax.

The OBRA 89 changes apply to tax returns due after Dec. 31, 1989, and so do not affect the instant case. OBRA 89, sec. 7721(d), 103 Stat. 2400.

Section 2031(a)[4] provides that the value of a decedent's gross estate includes the value of all his "property". The "property" thus referred to includes decedent's bank accounts. Sec. 20.2031–5, Estate Tax Regs.[5]

Because section 6660 applies to "property" in the context of the estate tax, and bank accounts are "property" in the context of the estate tax, it follows that bank accounts are "property" to which section 6660 applies.

The command of section 2031(a) is that the "value" of decedent's property is to be included in the "value" of decedent's gross estate. Thus, it is not enough to identify the property, but the identified property must be valued. Section 6660(c) uses the term "value" in its basic definition of "valuation understatement", by reference to "the value of any property claimed on any return".

It follows that, under section 6660, the values of decedent's bank accounts claimed on petitioner's estate tax return are to be compared to the correct values, and, if the numbers meet the requirements of section 6660 (and the parties' stipulations make it clear that they do, see *supra* table 3), then the addition to tax is to be imposed, unless the addition to tax is waived. See discussion of waiver *infra* part I. B.

We conclude that (1) there is a valuation understatement with respect to the St. John Bank account and the applicable percentage is 10 percent and (2) there is a valuation understatement with respect to the First National Bank account and the applicable percentage is 30 percent.[6] See sec. 6660(b), *supra* note 3.

---

[4] SEC. 2031. DEFINITION OF GROSS ESTATE.

(a) GENERAL.—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

[5] Sec. 20.2031–5, Estate Tax Regs.

§ 20.2031–5. Valuation of cash on hand or on deposit.—The amount of cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank, is included in the decedent's gross estate. If bank checks outstanding at the time of the decedent's death and given in discharge of bona fide legal obligations of the decedent incurred for an adequate and full consideration in money or money's worth are subsequently honored by the bank and charged to the decedent's account, the balance remaining in the account may be returned, but only if the obligations are not claimed as deductions from the gross estate.

[6] The notice of deficiency shows that the sec. 6660 addition to tax in the instant case is the sum of the additions calculated separately for each of the bank accounts. Petitioner has not contended that respondent erred in the method of calculation, and so we do not consider in the instant case whether the bank accounts should be considered collectively as one property for application of sec. 6660.

Petitioner contends that section 6660 applies only to property that requires "an estimation of value", that bank accounts do not require estimates, and thus that section 6660 does not apply to bank accounts. Petitioner bases its position on analogies to section 6659 and on current section 1.6662–5(e)(3), Income Tax Regs., which, petitioner acknowledges, does not apply to 1986. (We note that the cited regulation applies only to "income tax imposed under chapter 1 of subtitle A", while the tax in the instant case is imposed under chapter 11 of subtitle B, sec. 1.6662–5(a), Income Tax Regs.)

Firstly, our guide has long been that which the Supreme Court set forth in *United States v. Olympic Radio & Television,* 349 U.S. 232, 236 (1955), and which the Supreme Court continues to rely on, *Commissioner v. Keystone Consol. Indus., Inc.,* 508 U.S. ____, ____, 113 S. Ct. 2006, 2011 (1993):

It may be that Congress granted less than some thought or less than was originally intended. We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit. We would not be faithful to the statutory scheme, as revealed by the words employed, if we gave "paid or accrued" a different meaning for the purposes of section 122(d)(6) than it has in the other parts of the same chapter. [*United States v. Olympic Radio & Television,* 349 U.S. at 236.]

See, e.g., *Zuanich v. Commissioner,* 77 T.C. 428, 442–443 (1981), and cases there cited. As we have pointed out, consistent uses of the words "property" and "value" in sections 6660(c) and 2031(a) make it clear that petitioner's claims of value on the estate tax return are subject to section 6660.

Secondly, it is well established that we may look to the legislative history of a statute where the statute is ambiguous. In addition, we may seek out any reliable evidence as to legislative purpose even where the statutory language appears to be clear. *United States v. American Trucking Associations,* 310 U.S. 534, 543–544 (1940); *U.S. Padding Corp. v. Commissioner,* 88 T.C. 177, 184 (1987), affd. 865 F.2d 750 (6th Cir. 1989); *Huntsberry v. Commissioner,* 83 T.C. 742, 747–748 (1984); *J.C. Penney Co. v. Commissioner,* 37 T.C. 1013, 1017 (1962), affd. 312 F.2d 65 (2d Cir. 1962). However, where a statute appears to be clear on its face, we require unequivocal evidence of legislative purpose before

construing the statute so as to override the plain meaning of the words used therein. *Huntsberry v. Commissioner,* 83 T.C. at 747–748; see *Pallottini v. Commissioner,* 90 T.C. 498, 503 (1988), and cases there cited. We have examined the legislative histories of the 1981 enactment of section 6659, the 1984 enactment of section 6660 as an extension of section 6659, and the 1989 replacement of those provisions by sections 6662 and 6664. The few materials to which our attention has been directed suggest that the Congress may have been moved to act by concerns about litigation as to estimated values, but they do not suggest that the Congress decided that its enactment would apply to only those situations. We have not discovered any unequivocal evidence of any purpose by the Congress to vary the meanings of "property" or "value" so as to exclude the valuation of bank accounts from the reach of section 6660.

Thirdly, if we were to adopt petitioner's interpretation of the statute, then this would be likely to increase litigation, because we would have to rule with respect to every property (or category of property) whether the property (or category) required an "estimation" of value. Yet the legislative history makes clear the Congress' purpose to reduce litigation and provide a "'bright line' test".[7] Thus, petitioner's suggested interpretation of the statute is inconsistent with the congressional purpose of discouraging litigation, as shown by the relevant legislative history.

Petitioner also argues that the reductions of the bank account balances on account of the $61,000 check and the three $10,000 checks—

---

[7] As petitioner points out on brief, the legislative history for sec. 6660 essentially refers us back to the enactment of sec. 6659. Sec. 6659 was enacted by sec. 722(a)(1) of the Economic Recovery Tax Act of 1981 (ERTA 81), Pub. L. 97–34, 95 Stat. 172, 341. The Ways and Means Committee report on sec. 6659 states, in pertinent part, as follows:

The Committee believes that a specific penalty is needed to deal with various problems related to valuation of property. This particular need is illustrated by the fact that there are about 500,000 tax disputes outstanding which involve property valuation questions of more than routine significance. * * *

\* \* \* \* \* \* \*

In recognition of the fact that valuation issues often are difficult, especially where unique property is concerned, the committee has decided to adopt a "bright line" test for the application of a new penalty. * * *

[H. Rept. 97–201, at 243 (1981), 1981–2 C.B. 352, 398.]

The conference agreement follows the House bill. H. Conf. Rept. 97–215, at 262 (1981), 1981–2 C.B. 481, 515.

was an act of omission, not an act of undervaluation of an asset. Essentially, petitioner took a deduction for four outstanding checks which respondent later determined were improper deductions. Any tax underpayment by petitioner is not attributable to a valuation overstatement, [sic] but rather, is attributable to the improper deduction claimed by the petitioner in arriving at the checking account balances reported.

The estate tax return has schedules for valuation of assets and separate schedules for deductions. The bank accounts are dealt with only as assets, on the appropriate schedule for such assets, and the only amounts shown on the estate tax return with respect to those assets are the amounts reported in our findings of fact, see *supra* table 3, and those amounts are reported on the estate tax return under the heading "Value". The four checks are not shown on the estate tax return as deductions, or subtractions, or reductions, or anything else.

But this is not merely a matter of whether an item was claimed in the wrong place on a tax return. If we were to accept this deduction argument, then any consideration that would arguably reduce the value of an asset in the gross estate could be described as a deduction; e.g., the marketability and minority discounts that we dealt with in valuing stock in a family corporation in *Estate of Jung v. Commissioner,* 101 T.C. 412, 434–446 (1993). We conclude that petitioner's attempt to characterize its actions with respect to the four checks as deductions, rather than as aspects of valuation is not sustainable. It would, if accepted, gut the undervaluation addition to tax.

We hold for respondent on this issue.

## B. *Waiver*

Petitioner contends that it should not be liable for an addition to tax under section 6660 because respondent committed an abuse of discretion by refusing to waive the addition to tax.

Respondent contends that petitioner is not entitled to a waiver because (1) petitioner did not have a reasonable basis under section 20.2031–5, Estate Tax Regs., for claiming that the bank account balances should be reduced by the amounts of the checks to Mary Ann, Meryle, Brenda, Brenda, and Bill; (2) petitioner failed to show that it acted in good faith in undervaluing the bank accounts; and (3) respondent did not

commit an abuse of discretion by refusing to waive the addition to tax.

We agree with respondent as to the St. John Bank account ($30,000 undervaluation) and with petitioner as to the First National Bank account ($61,000 undervaluation).

Section 6660(e) provides that the Secretary may waive all or part of the addition to the tax under section 6660 if the taxpayer shows both that (1) there was a reasonable basis for the valuation claimed on the tax return, and (2) the taxpayer acted in good faith in claiming that valuation. If the taxpayer has satisfied both of these predicates of the statute and respondent nevertheless refuses to waive the addition to tax, then respondent's refusal is reviewable by this Court on an abuse-of-discretion basis. See *Mauerman v. Commissioner,* 22 F.3d 1001, 1004 (10th Cir. 1994), revg. T.C. Memo. 1993–23; *Estate of Jung v. Commissioner,* 101 T.C. at 449–450. (As pointed out, *supra* note 3, in OBRA 89 this waiver provision was replaced by a reasonable cause exception, which now appears as section 6664(c)(1).)

### *St. John Bank Account*

We consider first whether petitioner had a reasonable basis for the $30,000 undervaluation of the St. John Bank account.

The notation "Gift" appears on the memo line of each of the three $10,000 checks by which the value of the St. John Bank account was reduced. See *supra* table 2. The checks were found in decedent's car after his death. The payees were the executrix' husband, her daughter, and her son-in-law. The evidence in the record does not show what petitioner's basis was for excluding these three checks from the value of the St. John Bank account. On brief, petitioner states that "it had a reasonable basis to believe, in good faith, that these checks constituted valid gifts and were not required to be included in the gross estate". The only suggestion as to what petitioner's basis was for this exclusion is the statement on brief that petitioner "was mistaken as to the application of law regarding delivery". However, there is no indication in the record as to what the mistaken belief was. Mary Ann as executrix presumably knew whether her immediate family as payees had received the checks. In the

absence of evidence as to how petitioner went about the task of decision-making with regard to these three checks, we have no way of judging whether petitioner's basis was reasonable.

Petitioner has the burden of proof on this matter. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering,* 290 U.S. 111, 115 (1933). On the record in the instant case, petitioner has failed to meet the statutory predicate of "showing * * * that there was a reasonable basis for the valuation claimed on the return" (sec. 6660(e)) as to the St. John Bank account undervaluation. Respondent's statutory power to waive the addition to tax is conditioned on petitioner's having made this showing, as well as a showing that the valuation claim was made in good faith. Petitioner's failure to meet this statutory predicate makes it unnecessary for us to consider (1) whether the $30,000 undervaluation was not made in good faith and (2) whether respondent committed an abuse of discretion in failing to waive the addition to tax as to this undervaluation.

We hold for respondent as to the undervaluation of the St. John Bank account.

*First National Bank Account*

We consider first whether petitioner had a reasonable basis for the $61,000 undervaluation of the First National Bank account. We then consider whether petitioner's valuation claim was made in good faith. Finally, we consider whether respondent's failure to waive the addition to tax was an abuse of discretion.

Petitioner's case, as to the $61,000 undervaluation of the First National Bank account, benefits from the contrast between the record as to this item and the record as to the three $10,000 gift checks drawn on the St. John Bank account.

(1) Decedent wrote all five of the table 2 *supra* checks in a period of 7 days. The three gift checks were written on one account. The $61,000 check and a $3,720 check were written on another account. The $3,720 check, with a memo line note "Fertilizer" is treated by respondent as a business expense check properly excludable from the value of the First National Bank account. See *supra* table 3, note 2. Thus, the

$61,000 check, with a memo line note "Past loan reimbursed expenses", was associated by decedent with a business expense check, and was separated by decedent from the gift checks.

(2) The $61,000 check was cashed by order of the Probate Court some months after decedent's death. Based on this order for the bank to honor the check, and the intent of decedent, as discussed in (1) above, we believe that a reasonably prudent estate in the circumstances of petitioner could conclude that the $61,000 check was outstanding at the time of decedent's death, and was properly treatable as a debt.

(3) A note from decedent to Mary Ann indicates that decedent believed a $46,800.30 debt to Mary Ann was created as a result of Mary Ann's services and a loan she made. The note does not explain the derivation of the amount, name the corporation involved, or illuminate why this purported debt would be considered a debt of decedent. However, in the context of the foregoing items, this note increases the reasonableness of petitioner's treatment of the $61,000 check as payment for a legal obligation.

(4) The 1984 dispute between decedent and Meryle caused Meryle's corporation to miss the deadline for applying for participation in the ASCS crop subsidy program. Although this dispute and income loss did not create a legal debt owed to Mary Ann by decedent, we believe that a reasonable estate in the circumstances of petitioner would have concluded that decedent believed this dispute and income loss did create a debt, and that decedent intended the $61,000 check to be a payment for this debt.

We conclude that petitioner had a reasonable basis at the time the estate tax return was filed for treating the $61,000 check as an outstanding check at the time of decedent's death and as payment of a debt. Under section 20.2031–5, Estate Tax Regs., we conclude, and we have found, that there was a reasonable basis at the time the estate tax return was filed for the valuation of the First National Bank account claimed on petitioner's estate tax return. We next consider whether petitioner acted in good faith in claiming this valuation.

Petitioner filed a timely estate tax return. Petitioner made an effort to determine its tax liability, and in fact reported a liability of almost $14,000 on its estate tax return. Peti-

tioner made an honest mistake of law and fact when it valued the First National Bank account, that was reasonable in light of the circumstances of petitioner. Petitioner merely reduced the value of the First National Bank account by the value of a $61,000 check, which petitioner had a reasonable basis to believe was an outstanding check, and was payment for a legal obligation of decedent. The Probate Court directed the check to be honored by the bank. It was reasonable for petitioner to believe that the value of the $61,000 check could have been claimed as a deduction from the gross estate. Such a deduction would have had the same real-world effect as subtracting the value of the check from the First National Bank account. Respondent does not direct our attention to any evidence pointing to lack of good faith.

We conclude, and we have found, that petitioner acted in good faith in claiming the valuation of the First National Bank account reported on its tax return.

We next consider whether respondent committed an abuse of discretion by failing to waive the section 6660 addition to tax applicable to the First National Bank account.

In the instant case we must determine whether or not respondent exercised discretion arbitrarily, capriciously, or without sound basis in fact. *Estate of Jung v. Commissioner,* 101 T.C. at 452. Petitioner had a reasonable basis for the valuation of the First National Bank account claimed on its tax return, and it supplied documentation of this to respondent during the examination process. Petitioner could have chosen to deduct the value of the $61,000 check from the gross estate as a debt of decedent, which would have had the same effect on the value of the taxable estate as subtracting the value from the bank account. The disallowance of that deduction would not have caused an undervaluation of the First National Bank account, and thus would not have given rise to the section 6660 addition to tax applicable to that account. Respondent's witness, who was respondent's estate and gift tax attorney examining the estate tax return, provided the evidence that respondent was aware that the Probate Court directed the $61,000 check to be cashed. This could fairly be interpreted as a ruling that the Probate Court regarded the $61,000 as payment of a liability of decedent. From the foregoing we conclude that respondent exercised discretion unreasonably and without adequate consideration

of the circumstances surrounding the valuation of the First National Bank account.

We conclude that respondent's refusal to waive the addition to tax applicable to the First National Bank account under section 6660 was an abuse of discretion.

We hold for petitioner on this issue.

## II. *Section 2011*

Section 2011[8] provides for a credit against the Federal estate tax for State death taxes paid in respect of any property included in the gross estate. Section 2011(b) limits the amount of the available credit to specified percentages of the adjusted taxable estate. The adjusted taxable estate is determined by reducing the taxable estate by $60,000. Sec. 2011(b). The taxable estate is determined by deducting from the value of the gross estate the deductions provided for in sections 2053–2056. Sec. 2051.

Petitioner contends that the 1984 and 1986 gifts referred to *supra* in table 1 are includable in the gross estate pursuant to section 2035(a), and so the Kansas inheritance tax paid on account of the gifted property is eligible for the credit for State death taxes. Sec. 2011(a). Also, petitioner maintains, those gifts are included in calculating the taxable estate, sec. 2051, and so they are to be taken into account under section 2011(b) in determining the maximum permis-

---

[8] Sec. 2011 provides, in pertinent part, as follows:

SEC. 2011. CREDIT FOR STATE DEATH TAXES.

(a) IN GENERAL.—The tax imposed by section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent).

(b) AMOUNT OF CREDIT.—The credit allowed by this section shall not exceed the appropriate amount stated in the following table:

| If the adjusted taxable estate is: | The maximum tax credit shall be: |
|---|---|
| Not over $90,000 | 8/10ths of 1% of the amount by which the adjusted taxable estate exceeds $40,000. |
| Over $90,000 but not over $140,000 | $400 plus 1.6% of the excess over $90,000. |
| Over $140,000 but not over $240,000. | $1,200 plus 2.4% of the excess over $140,000. |
| Over $240,000 but not over $440,000 | $3,600 plus 3.2% of the excess over $240,000. |
| Over $440,000 but not over $640,000 | $10,000 plus 4% of the excess over $440,000. |
| Over $640,000 but not over $840,000 | $18,000 plus 4.8% of the excess over $640,000. |
| Over $840,000 but not over $1,040,000 | $27,600 plus 5.6% of the excess over $840,000. |

\*       \*       \*       \*       \*       \*       \*

For purposes of this section, the term "adjusted taxable estate" means the taxable estate reduced by $60,000.

sible credit for State death taxes. Petitioner relies on both the "clear and unambiguous language" of the statute and the legislative history of the Tax Reform Act of 1976 (TRA 76), Pub. L. 94–455, 90 Stat. 1520.

On opening brief, respondent maintains that the gross estate does not include adjusted taxable gifts, that the 1984 and 1986 gifts are adjusted taxable gifts and so are not included in the gross estate, that no credit would have been allowable before TRA 76, and that the legislative history of TRA 76 shows that that Act was not intended to change prior law on this point. On opening brief, respondent does not refer to section 2035(a), the centerpiece of petitioner's analysis. On answering brief, respondent contends that section 2035(d), enacted as part of the Economic Recovery Tax Act of 1981 (ERTA 81), Pub. L. 97–34, 95 Stat. 172, causes section 2035(a) to not apply to the instant case.

We agree with respondent's contention on answering brief.

The gifts described *supra* in table 1 were made in 1984 and 1986, within 3 years before decedent's death, and so would be includable in the gross estate under section 2035(a),[9] were it not for section 2035(d)(1).[10] Section 2035(d)(1) renders section 2035(a) generally inapplicable to estates of decedents dying after 1981. In the instant case decedent died on October 2, 1986, and section 2035(d)(1) applies; thus the 1984 and 1986 gifts are not included in the value of decedent's gross estate.

This rule of section 2035(d)(1) is itself subject to exceptions in circumstances set forth in other paragraphs of section 2035(d); however, none of those exceptions applies to the instant case. See discussion of the interrelationship of these provisions in *Estate of Leder v. Commissioner,* 89 T.C. 235, 238–242 (1987), affd. 893 F.2d 237 (10th Cir. 1989).

---

[9] SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.

(a) INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

[10] SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.

\*      \*      \*      \*      \*      \*      \*

(d) DECEDENTS DYING AFTER 1981.—

(1) IN GENERAL.—Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981.

The legislative history of the enactment of section 2035(d) by section 424 of ERTA 81, 95 Stat. 317, indicates that the expected consequences of section 2035(d)(1) are that (1) "the post-gift appreciation will not be subject to transfer taxes" and (2) "such property will not be considered to pass from the decedent and the step-up basis rules of section 1014 will not apply." H. Rept. 97–201, at 187 (1981), 1981–2 C.B. 352, 390. The same language appears in Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 262 (J. Comm. Print 1981). Except for the bill section number, this provision of the statute is identical to the provision as reported by the Ways and Means Committee. The Senate bill would have achieved the first of these consequences by continuing to include recent gifts in the gross estate, but by providing "that the value of any gift required to be included in a decedent's gross estate because it was made within three years of death shall be its value on the date of gift." S. Rept. 97–144, at 138 (1981), 1981–2 C.B. 412, 466.[11] The conference committee accepted the House version and not the Senate version. H. Rept. 97–215, at 255 (1981), 1981–2 C.B. 481, 511. Neither of the committee reports nor the General Explanation discusses the impact that this congressional choice might have on the credit for State death taxes.

Under section 2011(a), a condition for allowance of the credit for State death taxes is that the State death taxes have been paid "in respect of any property included in the gross estate". The amounts of the 1984 and 1986 gifts are not properly includable in decedent's gross estate. It follows that no credit is allowable for the Kansas inheritance tax imposed with respect to the amounts of these gifts. *Second Nat. Bank*

---

[11] Sec. 2035(d) was enacted as part of H.R. 4242, which became ERTA 81. The Senate Finance Committee report in question is the report on H.J. Res. 266, a joint resolution to provide for a temporary increase in the debt limit. The Senate debated and passed H.J. Res. 266, but then returned it to the Senate Calendar. When H.R. 4242 was received from the House of Representatives, the Senate substituted the language of H.J. Res. 266 that it had previously adopted, in place of the House-passed language of H.R. 4242. The text of sec. 2035(d) as presented to the conference committee as part of the Senate amendment to H.R. 4242 appears to be identical to the text of that provision as reported by the Senate Finance Committee on H.J. Res. 266. See Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 3–4, 261 (J. Comm. Print 1981). Accordingly, even though S. Rept. 97–144 (1981), 1981–2 C.B. 412, was a report on H.J. Res. 266, that report is properly a part of the legislative history of H.R. 4242, which became ERTA 81.

*of New Haven v. United States,* 422 F.2d 40 (2d Cir. 1970); sec. 20.2011–1(a), Estate Tax Regs.

Under section 2011(b), the maximum permissible credit depends on the size of the "adjusted taxable estate". The last sentence of section 2011(b) defines the adjusted taxable estate as "the taxable estate reduced by $60,000." Section 2051 provides that—

> For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the deductions provided for in this part. [I.e., part IV (relating to taxable estate) of subchapter A of chapter 11.]

Thus, under the statutory scheme, because the amounts of the gifts are not includable in the gross estate, it follows that they are not includable in the taxable estate, and so not includable in the adjusted taxable estate, and so not taken into account under section 2011(b) in determining the amount of the maximum credit allowable for State death taxes. Nothing in the statute or the legislative history causes us to believe that the Congress intended the terms we have interpreted to have different meanings in the foregoing sections. See, e.g., *Zuanich v. Commissioner,* 77 T.C. at 442–443.

We have not found any indication in the legislative history that the Congress focused on the section 2011 implications of the choices between the Senate version and the House version of this provision of ERTA 81.[12] We appreciate petitioner's position that it should be allowed to take account of the amounts of the 1984 and 1986 gifts. The effect of the unified tax scheme imposed in section 2001 by TRA 76 is that the amounts of these gifts increase the amount of petitioner's estate tax, and that the logic of providing the credit for State

---

[12] This is in contrast to the situation in TRA 76, where H. Rept. 94–1380, at 16 (1976), 1976–3 C.B. (Vol. 3) 735, 750, provides, in pertinent part, as follows:

Since the limitation on the credit against the estate tax for State death taxes is determined by reference to the taxable estate, a conforming change is made to reflect the fact that the credit does not enter into the computation of the taxable estate. The purpose of the conforming change is to continue the allowance of the same amount for the State death tax credit as under present law.

This Ways and Means Committee report is properly part of the legislative history of TRA 76 (even though it is a report on a different bill), having been approved by the conference committee on TRA 76, S. Rept. 94–1236, H. Conf. Rept. 94–1515, at 610 (1976), 1976–3 C.B. (Vol. 3) 807, 960. See *Estate of Sachs v. Commissioner,* 88 T.C. 769, 788 n.2 (1987), affd. in part and revd. in part 856 F.2d 1158 (8th Cir. 1988).

death taxes apparently would be served by allowing a partial avoidance of double taxation. See *Second Nat. Bank of New Haven v. United States,* 422 F.2d at 42. Nevertheless, it is clear that the Congress was faced with a choice of including the amount of the gifts in the gross estate, or excluding them from the gross estate. The Congress made the choice to follow the House version and exclude the gifts from the gross estate. Even though the particular consequence we face in the instant case may not have been appreciated by the Congress, we are obligated to follow the clear mandate of the statute. E.g., *Gunther v. Commissioner,* 92 T.C. 39 (1989), affd. 909 F.2d 291 (7th Cir. 1990).

We hold for respondent on this issue.

To reflect the foregoing, and the parties' agreements on other matters, *supra* note 2,

*Decision will be entered under Rule 155.*