Chabot, J., dissenting: The Congress decided that, if the Commissioner sent a notice of deficiency to a taxpayer, then the taxpayer should have help in determining the last date for petitioning this Court. The Congress decided to charge the Commissioner with the task of providing this help. The Congress decided to effectuate the foregoing by enacting that the Commissioner “shall include on each notice of deficiency” (emphasis added) the last date for petitioning this Court. Sec. 3463(a) of the 1998 Act. The majority’s opinion may be read to permit, or perhaps even encourage, the Commissioner to ignore the obligation of the statute, with no consequences except (1) where the taxpayer was misled and detrimentally relied on the misleading interpretation, or (2) perhaps where the taxpayer filed the “petition just after the expiration of the [statutory] filing period”. From the foregoing, I dissent. I. “Shall” When used in a statute, the word “shall” is ordinarily a word of command. See Escoe v. Zerbst, 295 U.S. 490, 493 (1935) (citing Richbourg Motor Co. v. United States, 281 U.S. 528, 534 (1930)); United States v. Wood, 295 F.2d 772, 783 (5th Cir. 1961); Estate of La Sala v. Commissioner, 71 T.C. 752, 762-763 (1979). Neither the context of the statutory provision nor its legislative history indicates that, in section 3463(a) of the 1998 Act, the word “shall” was intended to be directory rather than mandatory. Indeed, the full text of section 3463 of the 1998 Act (set forth supra in the majority’s opinion p. 359) shows that “shall” appears in each subsection of section 3463 of the 1998 Act; thus far it has not been seriously suggested that “shall” is other than mandatory as it appears in subsections (b) and (c). Giving “shall” the same meaning in each of the three places it appears in section 3463 of the 1998 Act, I conclude that the Congress’ choice of that word in subsection (a) mandates the Commissioner to state on the notice of deficiency what is the last date for petitioning this Court. See United States v. Olympic Radio & Television, 349 U.S. 232, 236 (1955);[1] Estate of Owen v. Commissioner, 104 T.C. 498, 507-508 (1995) (and cases cited therein); Office of the Legislative Counsel, U.S. House of Representatives, Style Manual, Drafting Suggestions for the Trained Drafter, at 3 (1989).[2] I would hold that section 3463(a) of the 1998 Act requires the Commissioner to state on the notice of deficiency what is the last date for petitioning this Court; and that the statutory language is not merely directory, that “shall” is not here the functional equivalent of “may”. II. “Each” Section 3463(a)of the 1998 Act requires the Commissioner to state this information on “each notice of deficiency”. As the majority’s opinion notes, the Congress concluded that some taxpayers need assistance in determining the deadline for filing a timely petition. However, the enacted statutory language and legislative history do not indicate that the Commissioner is obligated to provide the required assistance only to those who need it, or who might reasonably be expected to need it. Rather, the Congress imposed the statutory obligation with respect to each notice of deficiency. It is not at all unusual for the Congress to act more broadly than the confines of the problem described in the legislative history; the Congress has done so in many different areas of the tax law. See, e.g., Bartels Trust for Ben. of Univ. v. United States, 209 F.3d 147, 153-154 (2d Cir. 2000) (relating to charities’ unrelated trade or business income); Corn Belt Tel. Co. v. United States, 633 F.2d 114, 117-118 (8th Cir. 1980) (relating to the definition of “public utility property” for investment credit purposes); Warrensburg Board & Paper Corp. v. Commissioner, 77 T.C. 1107, 1110-1111 (1981) (relating to subchapter S corporations’ “one-shot” elections); Estate of Beal v. Commissioner, 47 T.C. 269, 271-272 (1966) (relating to includability of the value of certain annuities in decedents’ estates). Where the Congress has chosen to so legislate, the courts do not confine the statute to the original problem, but rather apply the statute to the wider net that the Congress has cast. The legislative history does not explain why the Congress chose to use statutory language that is broader than the problem it sought to address. However, it is plain that the Congress required the Commissioner to provide assistance on each notice of deficiency, and not merely where the assistance was, or might be, needed. We may speculate that the Congress so acted in order to simplify the Commissioner’s obligations, by not requiring the Commissioner to make case-by-case determinations. It is possible, of course, that the Congress decided to avoid case-by-case determinations on the part of the Commissioner, and yet require or permit the Court to make such determinations. This seems to be contemplated in the majority’s opinion, see supra p. 363 note 5, and is stated in Judge Swift’s dissent, see infra p. 371. However, I do not find evidence of such a distinction in either the statute or the legislative history. In any event, it is clear that the Congress required the Commissioner to provide the filing date deadline information on each notice of deficiency, a rule broader than the problem that gave rise to Congress’ concern. III. The Shotgun Behind the Door In section 3463 of the 1998 Act, the Congress imposed an obligation on the Commissioner. The Congress contemplated that the Commissioner might err in carrying out this obligation, by putting the wrong filing deadline date on the notice of deficiency. Accordingly, in section 3463 of the 1998 Act, the Congress provided a consequence for such an error; the Commissioner is not allowed to “sandbag”[3] the taxpayer, even inadvertently, by putting a date on the notice of deficiency that is after the last date for filing a timely petition. The Congress accomplished this in section 3463(b) of the 1998 Act by providing that a petition will be timely if it is filed by the date that the Commissioner set forth on the notice of deficiency. Consistent with the approach in section 3463(a) of the 1998 Act, the taxpayer’s right to the subsection (b) relief is not affected by whether the taxpayer was in fact misled by the Commissioner’s incorrect advice. Thus, the Congress specifically provided a consequence to the Commissioner’s failure to comply correctly. But, the majority in the instant case hold, there is not any consequence to the Commissioner’s failure to comply at all. Not only is there not any consequence provided for in section 3463 of the 1998 Act under the majority’s holdings, but there is not a shotgun behind the door.[4] The effect of the majority’s holding is to make section 3463(a) of the 1998 Act into mere surplusage. Section 3463(b) of the 1998 Act presumably would continue to operate in those instances where the Commissioner chose to specify in the notice of deficiency a cutoff date for filing a petition; subsection (c) would continue to provide an effective date; but under the majority’s holdings, subsection (a) would not have effect. The majority’s construction “offends the well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect.” Weinberger v. Hynson, Westcott & Dunning, 412 U.S. 609, 633 (1973); see Fort Stewart Schools v. F.L.R.A., 860 F.2d 396, 403 (11th Cir. 1988), affd. 495 U.S. 641 (1990); Beisler v. Commissioner, 814 F.2d 1304, 1307 (9th Cir. 1987), affg. T.C. Memo. 1985-25. We can interpret the statute so as to make it “work”, and we can do so without arrogating to this Court the authority to make line-drawing decisions that normally are regarded as being within the province of the Congress. Section 3463(a) of the 1998 Act directs the Commissioner to include certain information “on each notice of deficiency under section 6212 of the Internal Revenue Code of 1986”. Respectfully, I would interpret this congressional command as an instruction that the Commissioner must comply with in order to have a valid notice of deficiency. It is simple for the Commissioner to comply with this congressional command. It is simple for a reviewing court (ordinarily, this Court) to determine whether this congressional command has been complied with in any specific instance.[5] The power to determine the validity of a notice of deficiency is one that clearly is within this Court’s arsenal of powers. The exercise of this power does not draw us into the uncertainties of limitations periods and restrictions on assessments that may well result from other proposals. Although invalidation of the notice of deficiency may provide a windfall to some taxpayers, such windfalls are wholly within the power, and it may be, the technology, of the Commissioner to eliminate entirely. Invalidating the notice of deficiency under these circumstances may be regarded as legislating, but— We often must legislate interstitially to iron out inconsistencies within a statute or to fill gaps resulting from legislative oversight or to resolve ambiguities resulting from a legislative compromise. [U.S. Bulk Carriers v. Arguelles, 400 U.S. 351, 354 (1971); fh. ref. omitted.] Invalidating the notice of deficiency is consistent with the statutory scheme; it will put the shotgun back behind the door. We have on other occasions refrained from such interstitial legislation and left the statute with meaningless provisions. But we have done so only reluctantly, and after making substantial efforts to give effect to all the statutory language; and we have acknowledged when our efforts failed. See, e.g., Adams v. Commissioner, 70 T.C. 373 (1978), 70 T.C. 446 (1978), 72 T.C. 81 (1979), affd. without published opinion 688 F.2d 815 (2d Cir. 1982).[6] In that instance, our continuing respectful dialogue with the Congress resulted in the enactment of the Act of Dec. 24, 1980, Pub. L. 96-596, 94 Stat. 3469 (even before Adams was affirmed), which revised the law to resolve the problems we had struggled with. The majority’s holdings in the instant case make part of the statute meaningless. There is a way to give effect to the entire statute, and to do so within our normal range of powers and in a way that is not likely to lead us into difficult interpretative and practical problems. The majority reject that approach. Respectfully, I dissent. Gale and Marvel, JJ., agree with this dissenting opinion. In United States v. Olympic Radio & Television, 349 U.S. 232, 236 (1955), the Supreme Court instructed as follows: It may be that Congress granted less than some thought or less than was originally intended. We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit. We would not be faithful to the statutory scheme, as revealed by the words employed, if we gave “paid or accrued” a different meaning for the purposes of section 122(d)(6) [I.R.C. 1939] than it has in the other parts of the same chapter. To the same effect see Commissioner v. Keystone Consol. Indus., Inc., 508 U.S. 152, 159 (1993). The House Legislative Counsel’s Office’s style manual instructs legislative drafters as follows: (4) Use same word over and over. — If you have found the right word, don’t be afraid to use it again and again. In other words, don’t show your pedantry by an ostentatious parade of synonyms. Your English teacher may be disappointed, but the courts and others who are straining to find your meaning will bless you. (5) Avoid utraquistic subterfuges. — Do not use the same word in 2 different ways in the same draft (unless you give the reader clear warning). See, e.g., Barkins v. International Inns, Inc., 825 F.2d 905, 907 (5th Cir. 1987) (“waiting until the expiration of the limitations period to point out an error recognizable well before”). See Silver v. New York Stock Exchange, 373 U.S. 341, 352 (1963). Sec. 7522(a) provides that notices of deficiency and other specified documents must include descriptions of the bases for certain matters. The adequacy of any such description may fairly be open to dispute. The statute provides that “An inadequate description * * * shall not invalidate such notice.” This contrasts sharply with the requirement of sec. 3463(a) of the 1998 Act, where proper compliance ordinarily is not open to dispute. In Adams v. Commissioner, 72 T.C. 81, 92 n.16 (1979), we stated as follows: It was not without considerable deliberation and thought that our decision herein was reached. We can certainly appreciate Congress’ desire to eliminate the potential for abuse inherent in dealings with tax-exempt organizations. Also, we are not unaware of the difficulty in drafting legislation which will equitably dispose of a variety of factual settings. Regrettably, however, when considering all the potentially viable alternatives available to assist us in implementing the statute, we were consistently confronted with another statute or well-established rule of law which prevented our reaching a satisfactory resolution of the problems discussed herein.